IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DASSO INTERNATIONAL, INC. and
EASOON USA, LLC,

        Plaintiffs/Counterclaim Defendants,

        v.

MOSO NORTH AMERICA, INC. and
MOSO INTERNATIONAL BV,

        Defendants/Counterclaim Plaintiffs.

Civil Action No. 17-1574-RGA

EASOON USA, LLC,

        Plaintiff,

        v.

BRETT KELLY, MARK CLIFTON, and
DAVID OSTERMAN, a/k/a STEVE
OSTERMAN,

        Defendants.

Civil Action No. 19-564-RGA

MEMORANDUM

Before me is the Report & Recommendation of a United States Magistrate Judge. (D.I.

316).   It addresses Defendants' Motions for Summary Judgment and to Exclude Expert

Testimony (D.I. 239, D.I. 240); Plaintiffs' Motions for Summary Judgment (D.I. 248); Plaintiffs'

Conditional Motion for Presumption under § 295 (D.I. 243); and Defendants' Motion to Strike

(D.I. 295).   The Magistrate Judge recommended that I:

1

1. DENY Defendants' Motions to Exclude Expert Testimony (D.I. 239, D.I. 240);

2. DENY Defendants' Motion for Summary Judgment of Non-Infringement (D.I. 239);

3. DENY Defendants' Motion for Summary Judgment of Invalidity as to Claims 13 and 15 (D.I. 239);

4. DENY Defendants' Motions for Summary Judgment on the Second Amended Complaint's (D.I. 25) Count II (Tortious Interference with Prospective Economic Advantage), Count III (Violation of Delaware Deceptive Trade Practices Act), and Count IV (Aiding and Abetting Breach of Fiduciary Duty) (D.I. 239);

5. DENY Defendants' Motions for Summary Judgment on the Companion Complaint's (C.A. No. 19-564, D.I. 1) Count I (Breach of Fiduciary Duty), Count II (Breach of the Duty of Loyalty), Count III (Violation of the Uniform Deceptive Trade Practices Act), Count IV (Misappropriation of Trade Secrets), and Count V (Tortious Interference With Business Relations) (D.I. 240);

6. GRANT-IN-PART and DENY-IN-PART Plaintiffs' Motion for Summary Judgment of Nonobviousness (D.I. 248);

7. GRANT Plaintiffs' Motion for Summary Judgment on Patent Exhaustion (D.I. 248);

8. DENY Plaintiffs' Motion for Summary Judgment on Counts VI (Libel *Per Se*) and VII (Trade Libel) of MOSO's Counterclaims (D.I. 248);

9. GRANT Plaintiffs' Motion for Presumption under § 295 (D.I. 243); and

10. DENY Defendants' Motion to Strike (D.I. 295).

MOSO filed three objections to the Report: (1) the recommendation to grant Plaintiffs' Motion for Presumption under § 295; (2) the recommendation to deny Defendants' Motion to Strike; and (3) the recommendation to deny Defendants' Motions for Summary Judgment on Counts II and III of Plaintiffs' Second Amended Complaint and Counts III and V of the Companion Complaint. (D.I. 318).   Plaintiffs responded to MOSO's objections. (D.I. 321).   I will review each objection in turn.

I will ADOPT the Report's recommendations to which there is no objection.

## I.   BACKGROUND

On November 2, 2017, Plaintiffs Dasso International, Inc. and Easoon USA, LLC (together, "Plaintiffs") initiated this suit against MOSO North America, Inc. and MOSO International BV (together, "MOSO") alleging infringement of U.S. Patent No. 8,709,578 ("the '578 patent"). (D.I. 1).   The '578 patent discloses a bamboo scrimber and a manufacturing method thereof.   Plaintiffs filed a Second Amended Complaint on February 2, 2018, which, in addition to patent infringement (Count I), alleges tortious interference with prospective economic advantage (Count II), violation of the Delaware Deceptive Trade Practices Act (Count III), and aiding and abetting breach of fiduciary duty (Count IV). (D.I. 25).   MOSO filed an Answer and Counterclaims (D.I. 28), which MOSO later amended. (D.I. 46).   Presently, MOSO's counterclaims are declaratory judgment of non-infringement of the '578 patent (Count I), declaratory judgment of patent exhaustion (Count II), declaratory judgment of invalidity of the '578 patent (Count III), violation of the Delaware Deceptive Trade Practices Act (Count IV), tortious interference with prospective economic advantage (Count V), libel *per se* (Count VI), trade libel (Count VII), and slander *per se* (Count VIII). (D.I. 263).

3

On November 17, 2017, Easoon filed suit ("Companion Complaint") against Brett Kelly,

Mark Clifton, and David S. Osterman (together, "individual defendants") in the Northern District

of Georgia, alleging breach of fiduciary duty (Count I), breach of the duty of loyalty (Count II),

violation of the Uniform Deceptive Trade Practices Act (Count III), misappropriation of trade

secrets (Count IV), tortious interference with business relations (Count V), fraud (Count VI), and

civil conspiracy (Count VII). (C.A. No. 19-564, D.I. 1).   The Companion Complaint was

transferred to this Court, and I granted a motion to consolidate Easoon's action against the

individual defendants with the Plaintiffs' action against MOSO. (D.I. 124).

## II.   DISCUSSION

### A.   Plaintiffs' Motion for § 295 Presumption

MOSO objects to the Magistrate Judge's recommendation to grant Plaintiffs' Motion for

Presumption under 35 U.S.C. § 295 for claims 8, 9, 10, 13, 15, 16, and 19 of the '578 patent.   I

will review the Magistrate Judge's factual findings for clear error and her legal conclusions *de

novo*, as the determination of whether to apply a presumption of infringement is a non-

dispositive matter. D. Del. LR 72.1(a)(2); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; *see

Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356,

1359 (Fed. Cir. 2000) (reviewing "the legal conclusion regarding proper application of § 295

without deference").

In actions alleging infringement of a process claim, the court may impose a presumption

that the accused infringer's product was made by the patented process and may shift the burden

of proving non-infringement to the accused infringer if the court finds: "(1) that a substantial

likelihood exists that the product was made by the patented process, and (2) that the plaintiff has

4

made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine." 35 U.S.C. § 295.   District courts are given wide discretion in determining when to determine whether to shift the burden under § 295. *Nutrinova*, 224 F.3d at 1360.

### 1.   Substantial Likelihood of Infringement

For the first requirement under § 295, "the burden for establishing a substantial likelihood of infringement has been described as 'less than . . . proving successfully at a trial by a fair preponderance of the evidence that a product in question was in fact made by the patented process but would be more than a slight possibility that the product was so made.'" *LG Display Co. v. AU Optronics Corp.*, 709 F. Supp. 2d 311, 335 (D. Del. 2010) (citation omitted).   In other words, the patentee "need only present evidence that would support a reasonable conclusion that the imported product was made by the patented process." *Id.*

The Magistrate Judge found that there is a substantial likelihood that the accused products were made by the patented process. (D.I. 316 at 57–58).   In her analysis, the Magistrate Judge referenced her earlier analysis of Defendants' Motion for Summary Judgment of Non-Infringement, which she recommended I deny. (*Id.*).   In reviewing the summary judgment motion, the Magistrate Judge viewed the evidence in the light most favorable to Plaintiffs—the nonmoving party. (*Id.* at 24).   MOSO argues that the Magistrate Judge continued to view the evidence in the light most favorable to Plaintiffs in her finding of substantial likelihood of infringement under § 295. (D.I. 318 at 3).   I disagree.   There is no indication that the Magistrate Judge improperly viewed the evidence in Plaintiffs' favor in her § 295 determination.   The

5

Magistrate Judge based her conclusion "upon the evidence presented by plaintiffs here," so MOSO's contention that the Magistrate Judge improperly weighed the evidence is unwarranted.

MOSO also makes the general objection that the Magistrate Judge failed to address completely MOSO's evidence of non-infringement. (*Id.* at 3–4). Based on MOSO's briefs (D.I. 241 & 270), I gather that MOSO has three arguments in support of its contention that Plaintiffs have not shown a substantial likelihood of infringement: (1) the Accused Process does not infringe because it uses "crushed bundles" rather than "slotted strips"; (2) Plaintiffs have not provided sufficient evidence to prove that the Accused Process performs the "forming a plurality of slots" limitations in claims 8 and 16; and (3) Plaintiffs have not provided any evidence to prove that the Accused Process performs the "modifying the bamboo scrimber through heat-treatment" step in claims 16 and 19. The Magistrate Judge addressed each of these arguments in her review of Defendants' Motion for Summary Judgment of Non-Infringement. (D.I. 316 at 24–39). I will address each argument in turn.

### a.  The Use of "Crushed Bundles" in the Accused Process

In its motion for summary judgment, MOSO argued that the Accused Process does not infringe because it uses "crushed bundles" rather than "slotted strips." (D.I. 241 at 8–12). The Accused Process crushes the bamboo strips after the disputed "forming a plurality of slots" step. (*Id.* at 9; D.I. 316 at 27). Based on this additional crushing step, MOSO argued that the Accused Process does not infringe independent claims 8[1] and 16 because "it is crushed bundles in the

---

[1] Independent claim 8 recites: "A method of manufacturing a bamboo scrimber comprising steps of:

      preparing bamboo strips from bamboo;

      forming a plurality of slots in each of the prepared bamboo strips penetrating through the
         bamboo strip substantially in a direction of thickness defined by the bamboo strip and

Accused Process, not slotted strips, that are modified through heat treatment, impregnated with an adhesive, dried and ultimately pressure-pressed to form a scrimber product." (D.I. 241 at 9). Plaintiffs argued that the claim language in claim 8 contradicted MOSO's argument because the later steps never reference "slotted strips." (D.I. 269 at 8–9).   Instead, the claim language references "modifying the formed bamboo strips," "impregnating the modified bamboo strips," "drying the impregnated bamboo strips," and "pressure-pressing the dried bamboo strips." (*Id.*).

The Magistrate Judge properly classifies MOSO's "crushed bundles" argument as a claim construction argument. (D.I. 316 at 28).   MOSO is essentially asking the court to limit the terms "formed bamboo strips," "modified bamboo strips," "impregnated bamboo strips," and "dried bamboo strips" to "slotted strips." (*Id.* at 28–29).   The Magistrate Judge recommends that I deny this request. (D.I. 316 at 30). MOSO did not object to this recommendation.   Thus, I adopt the Magistrate Judge's recommendation, and I do not construe these terms.[2]   Accordingly, MOSO's argument that it does not infringe because the Accused Process uses "crushed bundles" rather than "slotted strips" does not provide a basis to overturn the Magistrate Judge's finding that there is a substantial likelihood of infringement.

---

a substantially longitudinal direction defined by the slots is substantially consistent with a substantially longitudinal direction defined by fibers of the bamboo strip;
modifying the formed bamboo strips through heat-treatment so that at least a part of hemicelluloses in said bamboo strips is pyrolysized;
impregnating the modified bamboo strips into an adhesive;
drying the impregnated bamboo strips; and
pressure-pressing the dried bamboo strips in a mold until the adhesive is cured so as to form the bamboo scrimber."

'578 patent, 11:65–12:13.

[2] When a party seeks claim construction, it ought to request claim construction.   There is a process that we follow in connection with claim construction; MOSO did not follow it (or anything close to it) in the summary judgment briefing.

### b. "Forming a Plurality of Slots" Limitation

MOSO also contends that Plaintiffs' evidence does not establish that the Accused Process performs the "forming a plurality of slots" limitation in claims 8 and 16. (D.I. 241 at 12–18). I have construed this limitation to have its plain meaning with the clarification, "The slots need not extend all the way through the strip, but must penetrate deeper than an incision." (D.I. 128 at 6). The Magistrate Judge found that there was "ample evidence in the record that the accused process performs this step." (D.I. 316 at 32 & n.174 (citing D.I. 271, Ex. 34 at 25–26, 29; D.I. 245, Ex. H at ¶¶ 20–23; *id.*, Exs. C, F, G; D.I. 106 at 6–7)).

It is undisputed that MOSO uses a "toothed" roller while manufacturing its bamboo strips. (D.I. 245, Ex. E, ¶ 43). Plaintiffs' expert Dr. Rubin Shmulsky contends that the roller forms "slots" in the bamboo strip, while MOSO's expert Dr. Felix Böck contends that the roller forms "incisions."

Dr. Shmulsky compared MOSO's Bamboo X-treme product with Plaintiffs' product and concluded that the products are "virtually identical."[3] (D.I. 246 at ¶¶ 34–39). Dr. Shmulsky stated, "Slots in the MOSO product are of sufficient depth to cause the strips to fail in a reasonably controlled manner at their weakest points." (D.I. 271, Ex. 34 at 25). He further

---

[3] Of course, one cannot prove infringement by comparing the accused product with Plaintiffs' product. MOSO does not make this point, however. Instead, MOSO simply argues that Plaintiffs have not established that Plaintiffs' product was made using the process recited in claim 8. (D.I. 270 at 10). In the context of submitting sufficient evidence to invoke the § 295 presumption, though, and assuming that showing the products are the same is permissible, MOSO has a point, as the evidence that Plaintiffs manufacture their product by the patented process is extremely conclusory. (*See* D.I. 246 at ¶ 32). Thus, while I acknowledge Dr. Shmulsky's comparison, I cannot give it any weight on this point. I nevertheless conclude that the rest of Dr. Shmulsky's analysis is sufficient to support the reasonable conclusion that the accused process meets the "forming a plurality of slots" limitation.

8

opined that MOSO's process does not constitute an "incision." (*Id.* at 26).   He explains, "When

wood or other like material is 'incised' to allow for absorption of, for example, chemical

treatments, the 'incisions' are surface level and at such a depth as to allow for increased

permeability of the wood to the treatment.   That is, the 'incisions' are not at such a depth as to

promote failure along the plane of the incision." (*Id.*).   Based on this understanding of

"incisions," Dr. Shmulsky concluded that the Accused Process forms "slots" because they "are to

such a depth so as to cause or purposely promote the failure of the strip along the plane of the

slot." (*Id.*).

Dr. Shmulsky also examined the roller and a bamboo strip produced by MOSO's milling

machine that Mr. Rene Zaal used during his testimony at the preliminary injunction hearing and

concluded that the roller caused slotting. (D.I. 246 at 16–20).

MOSO's expert Dr. Böck opines that the roller creates incisions in each bamboo strip,

rather than slots. (D.I. 245, Ex. H at ¶ 21).   He bases this opinion on his conversations with Mr.

Zaal regarding the process MOSO's partners use to manufacture the accused products. (*Id.* at ¶

20).   In its objections to the Magistrate Judge's Report, MOSO states that this conflict in the

experts' declarations weighs against a finding of a substantial likelihood of infringement. (D.I.

318 at 3).   In response, Plaintiffs argue that there is not a significant conflict as Dr. Böck's

assertion that MOSO's suppliers "incise" the bamboo strips is not supported by any

measurements of the depth of the slots, which Dr. Böck could have made during his inspection of

the facilities of MOSO's suppliers in China. (D.I. 321 at 5–6).   Plaintiffs also argue that even if

the toothed roller used in MOSO's process only makes an incision, the incision is converted to a

slot when the "incised" bamboo strips pass through the downstream "pressure" rollers. (D.I. 244 at 17; *see also* D.I. 137 at ¶ 22).

I agree with the Magistrate Judge that Plaintiffs have provided enough evidence to support a reasonable conclusion that the accused products were made by the patented process. I do not see anything in Dr. Böck's report that negates this reasonable conclusion of infringement. Thus, I ADOPT the Magistrate Judge's finding that there is a substantial likelihood of infringement of the "forming a plurality of slots" limitation in claims 8 and 16.

### c.  "Heat Treatment" Limitation in Claims 16 and 19

MOSO argues that the Magistrate Judge erred in recommending that the § 295 motion be granted with respect to claims 16 and 19[4] because Plaintiffs failed to address the "heat treatment" limitation for these claims in their opening brief for their § 295 motion. (D.I. 318 at 3 n.2). Plaintiffs do not respond to this objection. (D.I. 321). In their opening brief for the § 295

---

[4] The main difference between claim 8 and claims 16 and 19 is when the "heat treatment" step occurs. In claim 8, the heat treatment step is performed before pressing the strips into the scrimber. '578 patent, 12:7-13. In claims 16 and 19, the heat treatment step is performed after the scrimber is formed. *Id.* 12:61-63, 13:7–10. For example, claim 16 recites: "A method of manufacturing a bamboo scrimber comprising steps of:
  preparing bamboo strips from bamboo;
  forming a plurality of slots in each of the prepared bamboo strips penetrating through the
    bamboo strip substantially in a direction of thickness defined by the bamboo strip
    and a substantially longitudinal direction defined by the slots is substantially
    consistent with a substantially longitudinal direction defined by fibers of the
    bamboo strip;
  impregnating the formed bamboo strips into an adhesive;
  drying the impregnated bamboo strips;
  pressure-pressing the dried bamboo strips in a mold until the adhesive is cured so as to
    form the bamboo scrimber; and
  modifying the bamboo scrimber through heat-treatment so that at least a part of
    hemicelluloses in said bamboo scrimber is pyrolysized."
*Id.* 12:47–63.

motion, Plaintiffs recognized that the parties dispute whether the "heat treatment" limitation in

claims 16 and 19 is infringed, yet Plaintiffs stated that the court only needs to focus on claim 8.

(D.I. 244 at 6 n.2).   Plaintiffs' brief provided no evidence of the "heat treatment" limitation in

claims 16 and 19 besides the statement, "Infringement of all the asserted method claims is

demonstrated by the accompanying Declaration of Dr. Rubin Shmulsky." (*Id.* at 2 n.1).

Because Plaintiffs failed to substantively address the "heat treatment" limitation in claims

16 and 19, or even point to a specific portion of Dr. Shmulsky's 36-page-long declaration,

Plaintiffs' argument on this issue is waived. *Acceleration Bay LLC v. Activision Blizzard, Inc.*,

2017 WL 3738468, at \*4 (D. Del. Aug. 29, 2017) (citing D. Del. LR 7.1.3(c)(2)).   For these

reasons, I sustain MOSO's objection to the Magistrate Judge's recommendations with respect to

claims 16 and 19.   Thus, I deny Plaintiffs' motion for a presumption under § 295 with respect to

the "heat treatment" limitation in claims 16 and 19.

### 2.   Plaintiffs' Efforts

The second requirement of § 295 requires the court to find that "plaintiff has made a

reasonable effort to determine the process actually used in the production of the product and was

unable to so determine."   In assessing this requirement, "courts examine the patentee's discovery

efforts and consider whether the patentee followed all of the avenues of discovery likely to

uncover the defendant's process, including written discovery requests, facility inspections, first-

hand observation of the process, independent testing of process samples, the use of experts, and

depositions of [the defendant's] officials.'" *LG Display*, 709 F. Supp. 2d at 335 (cleaned up).

To prove their "reasonable efforts," Plaintiffs show multiple attempts to discover the

actual process used: (1) Plaintiffs served document requests and interrogatories on MOSO; (2)

11

Plaintiffs' expert Dr. Shmulsky inspected samples of MOSO's product, as well as the roller and bamboo strip that were used during the preliminary injunction hearing; (3) Plaintiffs took a deposition of Mr. Zaal, MOSO's CEO; (4) Plaintiffs sought an inspection of the Jiahe factory and a voluntary deposition of a Jiahe representative; and (5) Plaintiffs sought a motion to compel an inspection of the Jiahe factory. (D.I. 244 at 17–19).

The Magistrate Judge found that Plaintiffs made reasonable efforts to determine the accused process. (D.I. 316 at 59).   The Magistrate Judge reached this finding because Plaintiffs sought documentation of the accused process, which MOSO did not provide, and sought to inspect at least one Chinese factory, which was opposed by MOSO. (*Id.*).   MOSO objects to this finding, arguing that it ignores the fact that MOSO did not have responsive documents to produce. (D.I. 318 at 4).   MOSO further points out that it attempted to facilitate an inspection of the Chinese factory, but the factory declined the inspection. (*Id.* at 5).   MOSO distinguishes its opposition to Plaintiffs' motion to compel inspection of the factory, which I sustained, because MOSO's opposition was related to its lack of control over the factory. (*Id.*).   I do not see how these facts change the outcome under § 295.   Section 295 requires Plaintiffs to make a "reasonable effort to determine the process actually used," not that these efforts be successful. Instead, § 295 requires that the plaintiff be unable to determine the actual process.   Thus, MOSO's evidence only shows that Plaintiffs' efforts were unsuccessful, not that they were insufficient to meet the reasonableness requirement.

MOSO further asserts that courts require plaintiffs to make some attempt at obtaining discovery from a foreign manufacturer to satisfy the second requirement of § 295, and that the Magistrate Judge improperly excused Plaintiffs from such efforts. (D.I. 318 at 5 (citing *Syngenta*

12

*Crop Protection, LLC v. Willowood, LLC*, 2017 WL 1133378, at *9–10 (M.D.N.C. Mar. 24, 2017); *LG Display*, 709 F. Supp. 2d at 336; *West v. Jewelry Innovations, Inc.*, 2009 WL 1010848, at *9 n.13 (N.D. Cal. Apr. 14, 2009))).   Plaintiffs respond that this assertion is not supported by the case law cited by MOSO. (D.I. 321 at 7).

I agree with Plaintiffs that none of the district court cases cited by MOSO require plaintiffs to make some attempt at obtaining discovery directly from a foreign manufacturer to satisfy § 295.[5]  Courts certainly look favorably on efforts to obtain discovery from a foreign manufacturer, but these efforts are not dispositive.[6]   Instead, as Plaintiffs point out, "courts have recognized the futility of patentees attempting to obtain plant inspections and document production from third parties in China via the Chinese legal system." (*Id.* at 6). *See, e.g.*, *Syngenta*, 2017 WL 1133378, at *10 ("[G]iven Tai He's location in China, requesting voluntary facility inspections or observing the process firsthand are unlikely possibilities for discovering information."), *aff'd in part, vacated in part, rev'd in part on other grounds*, 944 F.3d 1344 (Fed. Cir. 2019).

Plaintiffs assert that it would have been futile for them to request information directly from MOSO's suppliers in China because MOSO's suppliers are "hostile" to Plaintiffs. (D.I. 289 at 7).   MOSO attempted to facilitate an inspection of a Chinese factory, but the factory declined the inspection because it "faced too many issues in the past with Dasso" and Dasso was its

---

[5] *See Syngenta*, 2017 WL 1133378, at *10 ("While Syngenta did not seek discovery directly from Tai He . . . ."); *LG Display*, 709 F. Supp. 2d at 336 (declining to apply the § 295 presumption because plaintiffs failed to provide enough evidence as to infringement).
[6] For example, in *West*, 2009 WL 1010848, at *9 n.13, the plaintiff sent a witness to China to collect information about the accused process.   The court found that the evidence collected by the witness supported a finding of reasonable efforts, but never suggested that these efforts were required. *Id.*

competitor. (D.I. 245 at 389; D.I. 318 at 5).   I agree with Plaintiffs that further efforts to obtain

discovery directly from MOSO's Chinese suppliers likely would have been futile, and thus, such

efforts are not required to show "reasonable efforts" to discover the accused process.

I agree with the Magistrate Judge that Plaintiffs' attempts were reasonable efforts to

determine the accused process, satisfying the second requirement under § 295.

MOSO also argues that it was prejudicial for Plaintiffs to disclose their intent to seek a

presumption under § 295 two weeks after the close of expert discovery. (D.I. 318 at 6).   I

understand that the purported prejudice is that MOSO would have to conduct further expert and

fact discovery in order to prove non-infringement. (D.I. 270 at 19).   There is nothing that I can

see that is stopping MOSO from inspecting its contract manufacturing facilities in China and

obtaining evidence of non-infringement.   MOSO has been able to send its expert, Dr. Böck, to

inspect the same Chinese factory that denied Plaintiffs' inspection, and there is nothing stopping

Dr. Böck from returning for a further inspection.   As the Federal Circuit noted, and as is the case

here, "the accused infringer is in a far better position to determine the actual manufacturing

process than the patentee." *Creative Compounds, LLC v. Starmark Lab'ys*, 651 F.3d 1303, 1314–

15 (Fed. Cir. 2011).

Even if I did find that MOSO would be prejudiced, I do not think I would need to

consider any prejudice in my determination under § 295.   The Magistrate Judge declined

MOSO's prejudice argument because "nothing in the statute requires the court to evaluate

potential prejudice." (D.I. 316 at 60 n.335).   In support of its argument that the Court should

consider prejudice in assessing § 295, MOSO cites *Revolaze LLC v. J.C. Penney Corp.*, 2020

WL 2220158 (E.D. Tex. May 6, 2020).   The court in *Revolaze* declined to permit the plaintiff to

amend its infringement contentions to include a § 295 presumption after the close of discovery in part because of potential prejudice to the accused infringer. *Id.* at *3. I agree with the Magistrate Judge and Plaintiffs that this case is inapplicable because it concerns amending infringement contentions, which are intended to provide notice to accused infringers, not the substantive application of § 295. *Id.* at *3 n.2. Thus, because I am not convinced that MOSO is prejudiced here or that § 295 requires any evaluation of prejudice to the accused infringer, I reject MOSO's prejudice argument.

For these reasons, I ADOPT the Magistrate Judge's recommendation with respect to claims 8, 9, 10, 13, and 15 of the '578 patent, and I will grant Plaintiffs' Motion for Presumption under § 295 for these claims.

### B. Defendants' Motion to Strike

MOSO also objects to the Magistrate Judge's recommendation to deny Defendants' Motion to Strike the declarations of Francis James and Ryan Kline. I must set aside the Magistrate Judge's determination on the motion to strike if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

On January 3, 2020, I denied Plaintiffs' motion to extend the discovery deadline for Plaintiffs to depose third-party witnesses, including James and Kline. (D.I. 199 at 13:13–15). Plaintiffs submitted declarations of James and Kline in response to MOSO's motions for summary judgment on Plaintiffs' state law claims. (D.I. 271 at Exs. 30–31). MOSO moved to strike these declarations, as it is undisputed that Plaintiffs did not identify James or Kline in their Rule 26 disclosures or discovery responses. (D.I. 295, 296). The Magistrate Judge recommended that I deny the motion to strike. (D.I. 316 at 64).

15

Federal Rule of Civil Procedure 26 requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Each party has a continuing obligation to supplement or correct discovery disclosures in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

To determine whether a failure to disclose was harmless, courts in the Third Circuit consider the *Pennypack* factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)).

The Magistrate Judge found that the first factor weighed against exclusion. (D.I. 316 at 66–67). The Magistrate Judge reasoned that MOSO already knew the identities of James and Kline because Mr. Seng Chee Chua mentioned them by name during his deposition. (*Id.* at 66). The Magistrate Judge specifically points to MOSO's opening brief in support of its motion for summary judgment on the competition claims, in which MOSO cites portions of Mr. Chua's deposition testimony where he states that Kline and James told him about MOSO's statements

16

about Easoon. (*Id.* (citing D.I. 214 at 31)).[7]   Based on this, the Magistrate Judge concluded that MOSO could not have been "blindsided" by the two declarations filed by Plaintiffs in response to MOSO's motion. (*Id.*).

MOSO objects to this finding as clear error.   MOSO asserts that it was blindsided by the two declarations because MOSO had no reason to believe that Plaintiffs would use these declarations to support their claims. (D.I. 318 at 8).   Plaintiffs respond that MOSO was not prejudiced because James and Kline were identified by Mr. Chua, and "both [James and Kline] work for customers of Easoon that MOSO took when MOSO entered the U.S. market." (D.I. 321 at 9).

I find no clear error in the Magistrate Judge's finding with respect to prejudice.   I agree that MOSO had knowledge that James and Kline had relevant information regarding MOSO's alleged statements underlying Plaintiffs' state law claims, as shown by MOSO's citation to Mr. Chua's deposition testimony.[8]

The Magistrate Judge found that the second factor, the ability to cure the prejudice, weighed against exclusion because MOSO can depose James and Kline before trial, the date for which has not been set. (D.I. 316 at 67).   MOSO objects to this finding because, "Requiring Defendants to obtain, at their expense and at this late stage, the very testimony the Court said in its January 3, 2020 Order Plaintiffs could not obtain after the fact discovery deadline is itself unfair and prejudicial." (D.I. 318 at 8).

---

[7] The relevant deposition testimony is at D.I. 242-1, Ex. Q at 20:10–21:15.

[8] There is also no prejudice as to MOSO's summary judgment motion because the Magistrate Judge did not rely on the declarations of James and Kline in reaching her recommendation to deny Defendants' Motion for Summary Judgment as to the State Law Claims. (D.I. 316 at 63–64).

The Magistrate Judge found that the third factor, potential disruption, weighed against exclusion because there is no schedule to disrupt, as the trial date has not been set as a result of the COVID-19 pandemic. (D.I. 316 at 67).   MOSO objects to this finding because re-opening discovery would only disrupt the schedule further. (D.I. 318 at 9).

I find no clear error in the Magistrate Judge's findings with respect to the second and third factors.   MOSO can cure any prejudice by conducting depositions prior to trial, which will not cause any disruption to the trial schedule, as the trial date has yet to be set.

As to the fourth factor, the Magistrate Judge found that Plaintiffs did not act in bad faith, because James and Kline voluntarily submitted declarations for Plaintiffs' opposition to the summary judgment motion—Plaintiffs did not attempt to depose James and Kline. (D.I. 316 at 67).   MOSO objects to the finding as clear error. MOSO argues that by soliciting declarations from James and Kline as part of its summary judgment briefing, Plaintiffs showed a clear disregard for the January 3, 2020 order. (D.I. 318 at 7).

I do not agree that Plaintiffs' actions show a clear disregard for my January 3, 2020 order. As the Magistrate Judge reasoned, James and Kline submitted the declarations voluntarily, not via deposition.   Thus, the Magistrate Judge's finding of no bad faith is not clearly erroneous.

The Magistrate Judge found that the fifth factor weighed against exclusion because the testimony of James and Kline is important to establishing Plaintiffs' state law claims. (D.I. 316 at 67).   MOSO does not object to this finding. (*See* D.I. 318 at 7–9; D.I. 296 at 14–15).

For these reasons, I ADOPT the Magistrate Judge's recommendation to deny Defendants' motion to strike the declarations of James and Kline.

### C. Defendants' Motions for Summary Judgment on the Competition Claims

MOSO objects to the Magistrate Judge's recommendation to deny Defendants' Motions for Summary Judgment as to Counts II and III of Plaintiffs' Second Amended Complaint and Counts III and V of the Companion Complaint (together, the "Competition Claims"). I review the Magistrate Judge's recommendation on summary judgment *de novo*. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3).

The Magistrate Judge recommended that I deny summary judgment because MOSO failed to meet its burden as the moving party "to provide proper citation to the record or a 'showing' that the record lacks such evidence to support an absence or a presence of a genuine dispute." (D.I. 316 at 62 (citing Fed. R. Civ. P. 56(c)(1)). In its objection, MOSO states that its point in its summary judgment briefing was "that there is no admissible evidence establishing the allegedly defamatory statements underlying the Competition [Claims]." (D.I. 318 at 10). MOSO also states that Plaintiffs cannot establish the elements of the Competition Claims without the declarations of James and Kline. (*Id.*). Since I will adopt the Magistrate Judge's recommendation to deny Defendants' Motion to Strike, MOSO's arguments are moot because the two declarations are admissible to support the elements of the Competition Claims. Thus, I ADOPT the Magistrate Judge's recommendation to deny Defendants' Motions for Summary Judgment on the Competition Claims.

## III.    CONCLUSION

An appropriate order will issue.

Entered this 27th day of September, 2021.

_____
United States District Judge

20