**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DASSO INTERNATIONAL, INC.** <br> **and EASOON USA, LLC,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 17-cv-1574** |
| **MOSO NORTH AMERICA, INC. and** <br> **MOSO INTERNATIONAL BV,** | ) ) ) | |
| **Defendants.** | ) | |
| -------------------------------------------------- | ) | |
| **EASOON USA, LLC,** | ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 19-cv-564** |
| **BRETT KELLY, MARK CLIFTON,** <br> **and DAVID OSTERMAN,** | ) ) ) | |
| **Defendants.** | ) | |

## <u>INSTRUCTIONS TO THE JURY</u>

Date:  June 8, 2023

Members of the jury, you have seen and heard all the evidence, and you are about to hear the arguments of the attorneys.  Now I will instruct you on the law.

You have two duties as a jury.  Your first duty is to decide the facts from the evidence in the case.  This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts.  You must follow these instructions, even if you disagree with them.  Each of the instructions is important, and you must follow all of them.  You must also continue to follow the instructions that I gave you at the start of the trial that you may not communicate about the case or about people involved in the case with anyone other than your fellow jurors until after you have returned your verdict.

Perform these duties fairly and impartially.  Each party to the case is entitled to the same fair consideration.

Do not allow sympathy, prejudice, fear, or public opinion to influence you.  You should not be influenced by any person's national origin, race, color, age, or sex.

Nothing I am saying now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

To the extent that these instructions differ from the instructions that I read you at the beginning of the case, the instructions that I am giving you now are the ones that govern your consideration of this case.

The evidence consists of the testimony and the exhibits.  You should consider deposition testimony in the same way as you would if the witnesses had testified here in the courtroom.

In determining whether any fact has been proved, you should consider all of the evidence bearing on that fact, regardless of who offered the evidence.

You must make your decision based on what you recall of the evidence.  You will not have a written transcript of the testimony to consult.

Certain things are not evidence.  I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.  This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence, and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper.  You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence.  Their purpose is to discuss the issues and the evidence.  If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we sometimes look at one fact and conclude from it that another fact exists. In law we call this an "inference."  A jury is allowed to make reasonable inferences, so long as they are based on the evidence in the case.

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact.  Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

You are to consider both direct and circumstantial evidence.  The law allows you to give equal weight to both types of evidence, but it is up to you to decide how much weight to give to any evidence in the case.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

-        the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

-        the witness's memory;

-        any interest, bias, or prejudice the witness may have;

-        the witness's intelligence;

-        the manner of the witness while testifying;

-        the reasonableness of the witness's testimony in light of all the evidence in the case; and

-        any inconsistent statements or conduct by the witness.

You have heard witnesses, Rubin Shmulsky, Glenn Newman, Kent Harries, and Brian Napper, who gave opinions about certain subjects.  You do not have to accept the testimony of these witnesses.  You should judge it in the same way you judge the testimony of any other witness.  In deciding how much weight to give to this testimony, you should consider the witness's qualifications, how the witness reached his opinions, and the factors I have described for determining the believability of testimony.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial.  Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

You may find the testimony of one witness or a few witnesses to be more persuasive than the testimony of a larger number of witnesses.  You need not accept the testimony of the larger number of witnesses.

**The parties' claims**

The parties have asserted the following claims in this case:

Dasso/Easoon Claim 1:  Dasso and Easoon claim that MOSO has infringed one or more of Claims 1, 2, 4, 5, 6, 7, 8, 9, 10, 13, and 15 of the '578 patent.

Dasso/Easoon Claim 2:  Easoon claims that MOSO committed tortious interference with Easoon's prospective economic advantage.

Dasso/Easoon Claim 3:  Easoon claims that MOSO committed a violation of the Delaware Deceptive Trade Practices Act.

Dasso/Easoon Claim 4:  Easoon claims that one or more of Mr. Kelly, Mr. Clifton, and Mr. Osterman misappropriated Easoon's trade secrets.

Dasso/Easoon Claim 5:  Easoon claims that Mr. Kelly breached a fiduciary duty owed to Easoon.

Dasso/Easoon Claim 6:  Easoon claims that MOSO aided and abetted Mr. Kelly's breach of a fiduciary duty owed to Easoon.

Dasso/Easoon Claim 7:  Easoon claims that Mr. Kelly committed fraud.

MOSO Claim 1:  MOSO claims that Easoon committed tortious interference with MOSO's prospective economic advantage.

MOSO Claim 2:  MOSO claims that Easoon committed a violation of the Delaware Deceptive Trade Practices Act.

MOSO Claim 3:  MOSO claims that Easoon committed defamation.

MOSO Claim 4:  MOSO claims that Easoon committed trade libel.

I will discuss the requirements for each of these claims in the instructions that follow.

**Preponderance of the evidence / Clear and convincing evidence**

In the instructions that follow, I will use the terms "preponderance of the evidence" and "clear and convincing evidence."

A preponderance of the evidence is evidence that, when considered in light of all the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claims of the party with the burden of proof must make the scales tip somewhat toward its side.

Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is a higher burden of proof than proof by a preponderance of the evidence.

10

**Instructions regarding Dasso/Easoon Claim 1**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about those aspects of patent law that specifically relate to this case.

**Dasso/Easoon Claim 1 – "Person of ordinary skill"**

Some issues in patent cases are determined by considering a "person of ordinary skill in the field of the invention," a term that I will use later in these instructions. In this case, the field of the invention is engineered bamboo products.

It is up to you to decide the level of ordinary skill. In making this decision, you should consider all the evidence, including:

• the levels of education and experience of persons working in the field of the invention;

• the types of problems encountered in the field of the invention; and

• the sophistication of the technology in the field of the invention.

## Dasso/Easoon Claim 1 - The parts of a patent

You have been provided with a copy of the '578 patent.  Please look at the patent as I identify its different sections.

The first page of the '578 patent provides identifying information, including the date the patent issued and patent number along the top; the name(s) of the inventor(s), the filing date; and a list of documents considered in the Patent Office during the time the patent was being sought.

The next part of the patent, which is sometimes referred to as the specification, begins with a brief statement about the subject matter of the invention, which is called an abstract. This is found on the first page.

Next are the drawings, which appear as Figures 1 to 10 on the 7 drawing sheets. The drawings depict various aspects or features of the invention.  They are described in words later in the patent.

A description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page.  The lines on each page are also numbered.  A description of the '578 patent begins at column 1, line 1, and continues to column 11, line 33.  It includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.

The description of the invention is followed by one or more numbered paragraphs, which are called the claims.

**Dasso/Easoon Claim1 – The patent claims**

The claims of a patent are the numbered paragraphs at the end of the patent.  The claims describe what the patent owner may prevent others from doing.

Claims are usually divided into parts, called "limitations" or "requirements."  For example, a claim that covers the invention of a table may describe the tabletop, four legs and glue that holds the legs and the tabletop together.  The tabletop, legs and glue are each a separate limitation or requirement of the claim.

In this case, we are concerned with claims 1, 2, 4-7, 8-10, 13 and 15 of the '578 patent. Dasso/Easoon contend that MOSO infringed these claims.  MOSO denies this and contends that these claims are invalid.

To decide whether MOSO infringed the patent, you must compare the claims to the accused product and the accused process.  Similarly, in deciding a challenge to the validity of a patent based on obviousness, you must compare the claims to the asserted prior art.

In reaching your determinations with respect to infringement and invalidity, you must consider each claim of the patent separately.

**Dasso/Easoon Claim 1 – Infringement:  Interpretation of patent claims**

The owner of a patent has the right to prevent others from making, using, offering for sale, selling, or importing the invention covered by the patent.  A product or process infringes a patent if that product or process is covered by at least one claim of the patent. Importing a product made by a patented process is considered an infringement of a process claim.

I will tell you the meaning of any disputed terminology in the patent claims.  You must use the meanings I give you when you decide whether the patent is infringed and whether it is invalid.

**Dasso/Easoon Claim 1 – Independent and dependent claims**

There are two types of patent claims, independent claims and dependent claims. An independent claim stands on its own and does not refer to any other claim of the patent. A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the requirements of the other claim[s] to which it refers, as well as the requirements in the dependent claim itself, even though it does not repeat those requirements of the other claims.

Earlier I described a hypothetical patent claim for a table that described the tabletop, four legs, and glue to hold the legs and tabletop together. That is an example of an independent claim, which I will call claim 1. In that same hypothetical patent, a dependent claim, which I will call claim 2, might state, "the table of claim 1, where the tabletop is square." In this situation, in order to infringe dependent claim 2, it would not be enough for Dasso/Easoon to prove that MOSO made a table with a square tabletop – Dasso/Easoon would also have to prove, as stated in claim 1, that the table has four legs and glue to hold the legs and tabletop together.

16

**Dasso/Easoon Claim 1 – "Comprising"**

When a patent claim uses the term "comprising," it means that the invention

includes the listed requirements, but is not limited to those requirements.

**Dasso/Easoon Claim 1 – Interpretation of the patent claims**

I have provided you with a copy of the '578 patent. I have defined certain words and phrases in some of the claims. You must use these definitions in making your decision. The words and phrases I have defined are as follows:

• As used in claim 7 of the '578 patent, the term "wherein said pressure-pressed bamboo strips are either of cold-pressed and hot-pressed" is construed to mean: "The pressure-pressed bamboo strips are either (1) cold-pressed; or (2) hot pressed."

• As used in claim 10 of the '578 patent, the term "wherein the step of pressure-pressing includes the step of either of cold-pressing and then drying and hot-pressing" is construed to mean: "The step of pressure-pressing includes either: (1) cold-pressing and then drying; or (2) hot-pressing."

• As used in claim 1 of the '578 patent, the term "modified through heat-treatment so that at least a part of hemicelluloses in said bamboo strips is pyrolysized" is construed to have its plain and ordinary meaning.

• As used in claim 8 of the '578 patent, the term "modifying the formed bamboo strips through heat-treatment so that at least a part of hemicelluloses in said bamboo strips is pyrolysized" is construed to have its plain and ordinary meaning.

• As used in claim 1 of the '578 patent, the term "wherein each of said bamboo strips is formed with a plurality of slots penetrating through said bamboo strip" is construed to have its plain meaning. The slots need not extend all the way through the strip, but must penetrate deeper than an incision."

• As used in claim 8 of the '578 patent, the term "forming a plurality of slots in each of the prepared bamboo strips penetrating through the bamboo strip substantially in a

18

direction of thickness defined by the bamboo strip" is construed to have its plain meaning. The slots need not extend all the way through the strip, but must penetrate deeper than an incision."

•       As used in claims 13 of the '578 patent, the term "absolute dryness" is construed to mean: "The water content in the bamboo strips being very small so that the subsequent hemicelluloses pyrolysing will not be affected."

**Dasso/Easoon Claim 1 – Direct infringement**

Dasso and Easoon contend that MOSO has infringed claims 1, 2, 4-7, 8-10, 13 and 15 of the '587 patent.  You must consider each claim of the patent separately.

To succeed on this contention with regard to claims 1, 2, and 4-7 of the patent, Dasso and Easoon must prove both the following by a preponderance of the evidence:

1.     Every requirement in the particular patent claim you are considering is found in MOSO's product.

2.     MOSO made, used, sold, offered for sale, or imported that product in the United States.

Dasso and Easoon also contend that MOSO has infringed claims 8, 9, 10, 13 and 15 of the '587 patent.  With regard to each of these patent claims, you must find infringement unless MOSO proves a preponderance of the evidence that at least one requirement in the particular patent claim you are considering is not found in MOSO's process.

**Dasso/Easoon Claim 1 –Definition of infringement**

As I stated in the previous instruction, infringement occurs if each requirement of a claim is found in MOSO's accused product or accused process.  Comparison of the accused product to Easoon's products is irrelevant to this analysis.

Product claims:  As I have explained, Dasso and Easoon contend that MOSO's accused product infringed claims 1, 2, and 4-7 of the '587 patent.  To determine whether MOSO infringed the '587 patent, you must compare MOSO's product against each one of these claims.

A requirement of a claim is found in MOSO's product if the requirement is in the product exactly as it is in the claim or if the requirement is in the product in a manner that is equivalent to what is in the claim.

If all of the requirements of the particular patent claim you are considering are in MOSO's product exactly as they are in the claim, that is called "literal infringement."

If all of the requirements of the patent claim you are considering are in MOSO's product, but one or more of them is equivalent to what is in the claim, that is called "infringement by equivalence."

I note that claims 2 and 4-7 are all "dependent" claims.  To determine whether a dependent claim has been infringed, you must compare MOSO's product to both the dependent claim and the other claim or claims to which it refers.  For example, claim 2 says, 2.  "A bamboo scrimber as set forth in claim 1, wherein…"  In this situation, dependent claim 2 cannot be "literally" infringed unless claim 1 is also infringed.  For this reason, in the example you would have to compare MOSO's product to all the requirements of both claims 1 and 2 when deciding infringement of claim 2.

21

<u>Process claims</u>:  In addition, as I have stated, Dasso and Easoon contend that MOSO's accused process infringes claims 8-10, 13 and 15 of the '587 patent.  On these particular claims of the patent, MOSO must prove it does not infringe these claims.  To determine this, you must compare MOSO's accused process against each one of these claims.  I also note that claims 9, 10, 13, and 15 are "dependent" claims.

A requirement of a claim is not found in MOSO's process if the requirement is not in the process exactly as it is in the claim and if the requirement is not in the process in a manner that is equivalent to what is in the claim.

If at least one of the requirements of the particular patent claim you are considering is not in MOSO's process exactly as it is in the claim, there is no "literal infringement."

If at least one of the requirements of the patent claim you are considering is not in MOSO's process and is not equivalent to what is in the claim, there is no "infringement by equivalence."

**Dasso/Easoon Claim 1 – Infringement by equivalence**

A part of MOSO's product or a step in MOSO's process is equivalent to a claim requirement if a person of ordinary skill in the field of the invention would regard any differences between them as insubstantial.

A part or step is also equivalent to a claim requirement if it performs substantially the same function, in substantially the same way, to reach substantially the same result.

One factor you may consider in making the determination of equivalence is whether a person of ordinary skill in the field of the invention would have regarded MOSO's part or step to be interchangeable with the claim requirement.

In determining infringement by equivalence, you must still use the meanings for the claim requirements that I have provided.

**Dasso/Easoon Claim 1 – Determining infringement**

You must decide whether there is infringement separately for each claim.  There is one exception to this rule.  If you decide that an independent claim is *not* infringed, then there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.  In this case, the independent claims of the '578 patent that are at issue are claim 1 and claim 8.

**Dasso/Easoon Claim 1 – Willful infringement**

Dasso and Easoon contend that MOSO infringed the '578 patent willfully.

You are to consider the issue of willful infringement only if you have found that MOSO infringed the '578 patent.

Not all infringement is willful.

Infringement is willful if Dasso and Easoon prove by a preponderance of the evidence that MOSO knew that it was infringing the patent or acted in reckless disregard of Dasso and Easoon's rights.  In making this determination, you should consider all of the evidence.  You should consider what MOSO knew at the time that it performed the acts that are accused of infringement or manufactured or sold the accused products. You are not to consider whether MOSO consulted with an attorney.

**Dasso/Easoon Claim 1 – Validity of patent - general**

MOSO has challenged the validity of claims 1, 2, 4–7, 8–10, 13 and 15 of the '578 patent on the basis of lack of enablement, indefiniteness, and obviousness.

Each of the claims of the '578 patent is presumed to be valid.  For this reason, MOSO has the burden of proving invalidity by clear and convincing evidence, which I defined earlier.

You must evaluate and determine separately the validity of each claim of the '578 patent.

26

**Dasso/Easoon Claim 1 - Invalidity - Lack of enablement**

Under patent law, the part of the patent called the "specification" must meet certain requirements.  MOSO contends that claim(s) 1, 2, 4-7, 8-10, 13 and 15 of the '578 patent are invalid because the patent's specification fails to satisfy the law's enablement requirement.

The law requires the specification section of the patent to contain enough information to enable a person of ordinary skill in the field of the invention to make and use the invention, without an unreasonable amount of experimentation.  A patent does not have to state information that persons of ordinary skill in the field would be likely to know or could obtain without undue effort.

MOSO contends that claims 1, 2, 4–7, 8-10, 13 and 15 of the '578 patent are invalid because the specification fails to meet this requirement.  To succeed on this contention, MOSO must prove that the specification does not enable a person of ordinary skill in the field of the invention to make and use products and processes covered by the full scope of claims 1, 2, 4–7, 8-10, 13 and 15, without an unreasonable amount of experimentation. Whether the amount of experimentation is unreasonable depends on the complexity of the field of the invention and the level of expertise and knowledge of persons of ordinary skill in that field.

If MOSO proves this as to a particular claim of the patent by clear and convincing evidence, you should find that claim invalid.

**Dasso/Easoon Claim 1 – Invalidity - Indefiniteness**

MOSO also contends that the asserted claims are invalid for indefiniteness based on the "slots" limitation.  In addition, MOSO contends that claim 13 is invalid for indefiniteness based on the "absolute dryness" limitation.

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the art reading them is able to determine what the claims cover and what they do not cover.  If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the description of the invention contained in the patent.  A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the art what the patent claims cover.  Simply because claim language may not be precise does not automatically mean that the claim is indefinite.  Put differently, terms of degree are not *per se* indefinite.  Similarly, a patentee need not define the invention with mathematical precision in order to comply with the definiteness requirement.

If you find that MOSO has proven by clear and convincing evidence that a person of ordinary skill in the art would not understand with reasonable certainty what is and what is not, covered by a particular claim of the '578 Patent, you should find that claim invalid.

28

**Dasso/Easoon Claim 1 – Invalidity – Definition of prior art**

In addressing MOSO's invalidity defense based on obviousness, which I am about to explain, you will have to consider what is disclosed in the "prior art."

Before you may consider any disputed reference to be prior art with regard to the '578 patent, MOSO must prove by clear and convincing evidence that the reference was any one of the following:

- known or used by someone else in the United States before the date of invention, unless the knowledge or use was private or secret;

- in public use or on sale or offered for sale in the United States more than one year before the patent application was filed;

- patented by someone else before the date of the invention or more than one year before the patent application was filed;

- described in a publication before the date of the invention or more than one year before the patent application was filed; or

- described in a published patent application filed in the United States or a foreign country before the date of invention.

**Dasso/Easoon Claim 1 – Invalidity – additional definitions**

For purposes of the instructions on the preceding page, these definitions apply:

<u>Date of invention</u>:  The term "date of invention" as used in the previous instruction, means the date the '578 patent application was filed, April 18, 2008.

<u>Publication</u>:  To qualify as a "publication," the article, patent, other reference must be distributed to, or reasonably accessible by, persons interested in the field of the invention, and it must be complete enough to enable a person with ordinary skill in the field to use the invention without undue experimentation.

**Dasso/Easoon Claim 1 – Invalidity - Obviousness**

MOSO contends that claims 1, 2, 4–7, 8-10, 13 and 15 of the '578 patent are invalid because they are obvious.

To show that the invention described in the patent is obvious, MOSO must prove by clear and convincing evidence as to the particular patent claim you are considering that a person of ordinary skill in the field of the invention, who knew about all the prior art existing at the time the invention was made would have conceived the invention at that time.

Obviousness may be shown by considering one or more items of prior art in combination. The prior art combination must teach all the elements of the claimed invention.

In deciding obviousness, you should put yourself in the position of a person with ordinary skill in the field at the time the invention was made. You must not use hindsight; in other words, you may not consider what is known now or what was learned from the '578 patent. In addition, you may not use the '578 patent as a roadmap for selecting and combining items of prior art.

In making your decision regarding obviousness, you are to consider each of the following factors:

1.    The scope and content of the prior art. You may consider prior art that was reasonably relevant to the problem the inventor faced that a person of ordinary skill would consider in attempting to solve the problem.

2.    Any differences between the prior art and the invention in the patent claim that you are considering.

3.    The level of ordinary skill in the field of the invention at the time the invention

31

was made.

       4.      Additional factors, if any, that indicate that the invention was obvious or not obvious.  I will define them in the next instruction.

**Dasso/Easoon Claim 1 – Obviousness –**
**Additional factors indicating non-obviousness**

As I stated in the previous instruction, in deciding obviousness you should consider whether any of the following are true, which if so may indicate the invention was not obvious.

1.      Has the invention achieved commercial success?  If so, is that success based on the invention itself, rather than on advertising, promotion, sales tactics, or features of the product other than those found in the claimed invention?

2.      Has the invention satisfied a long-felt need for a solution to the problem facing the inventors at the time the invention was made?

3.      Did others try, but fail, to solve the problem solved by the claimed invention?

4.      Did others copy the invention?

5.      Did the invention achieve unexpected superior results over the prior art?

Not all of these factors may be present.  No single factor is more or less important than the others.

**Easoon Claim 1 – Invalidity- Obviousness – Combining references**

The fact that each of the elements of the claim may be found in the prior art is not enough, by itself, to prove obviousness.  In determining whether MOSO have proven obviousness, you may combine multiple items of prior art only if a person who has ordinary skill in the field would have been motivated to combine them when trying to solve the problem that is addressed by the claimed invention and would have had a reasonable expectation of success in doing so.

In deciding this, you may consider, among other things, any of the following factors:

1.    What the prior art suggests about combining;

2.    The knowledge possessed by persons who have ordinary skill in the field of the invention; and

3.    The effects of market pressures and design needs that existed at the time, and the number of identified and predictable solutions for those demands.

**Easoon Claim 2 and MOSO Claim 1 –**
**claims for tortious interference with prospective economic advantage**

Easoon's Claim 2 alleges that MOSO interfered with Easoon's prospective economic advantage.

MOSO's Claim 1 alleges that Easoon interfered with MOSO's prospective economic advantage.

Rather than giving you two separate instructions on these claims, I am going to give you a single instruction that covers both sides' claims. You must, of course, consider each side's claim separately.

To prevail on a claim for tortious interference with prospective economic advantage, the party asserting the claim must prove all of the following propositions by a preponderance of the evidence:

1.      The party asserting the claim had a reasonably probable expectation of a business relationship.

2.      The party opposing the claim intentionally interfered with that relationship.

3.      The interference was a proximate cause of damage to the party asserting the claim.

4.      The amount of damages.

On the next page, I will define certain of the terms I have just used.

**Tortious interference with prospective economic advantage claims – definitions**

Intentional interference:  A person or entity intentionally interferes with an expectation of a business relationship if he or it acts either with a desire to bring about the interference, or with the knowledge that the interference is substantially certain to occur as a result of his or its action.  The term substantially certain requires more than just knowledge of a likelihood or risk that interference could result.

Proximate cause:  The term proximate cause means a cause that directly produces the harm, and without which the harm would not have occurred.  A proximate cause brings about the harm, or helps to bring it about, and it must have been necessary to the result.  An injury may have more than one proximate cause.

**Easoon's Claim 3 and MOSO Claim 2 –**
**Delaware Deceptive Trade Practices Act claims**

Dasso and Easoon's Claim 3 alleges that MOSO violated the Delaware Deceptive Trade Practices Act.

MOSO's Claim 2 alleges that Easoon violated the Delaware Deceptive Trade Practices Act.

Rather than giving you two separate instructions on these claims, I am going to give you a single instruction that covers both sides' claims. You must, of course, consider each side's claim separately.

To prevail on a claim under the Delaware Deceptive Trade Practices Act, the party asserting the claim must prove both of the following propositions by a preponderance of the evidence:

1.	The opposing party disparaged the goods, services, or business of the party asserting the claim, by false or misleading representation of fact.

2.	The disparagement occurred in the course of the business, vocation, or occupation of the party opposing the claim.

The party asserting the claim is not required to prove that there was competition between the parties or that there was any actual confusion or misunderstanding.

**Easoon Claim 4 – misappropriation of trade secrets**

Easoon's Claim 4 alleges that Mr. Kelly, Mr. Clifton, and Mr. Osterman misappropriated Easoon's trade secrets in violation of the Georgia Trade Secrets Act. You must consider this claim separately as to each of the defendants.

The asserted trade secrets are:  price lists and internal financial information of Easoon, specifically, the following exhibits:  PTX 36, 37, 38, 54, 61, 69, 95, 102, 104, 105, 125, 128, 129, 137, 149, 179, 180, 181, 183, 184, 185, 186, 187, 189, 190, 191, 192, 193, 194, 195, and 197.

To prevail on this claim against the particular defendant you are considering, Easoon must prove both of the following propositions by a preponderance of the evidence:

1.      Easoon had a trade secret.

2.      The defendant misappropriated the trade secret.

I will define these terms in the next instruction.

**Misappropriation of trade secrets claim – definitions**

Trade secret:  A trade secret is defined as information that:  (1) has actual or potential economic value because it is not generally known to others who could benefit economically from its disclosure or use and who could not readily discover it on their own; and (2) is the subject of reasonable efforts to keep it secret.

Misappropriate:  A person misappropriates a trade secret if he: (1) discloses or uses a trade secret of another person or entity without express or implied consent; and (2) knew at the time that he had a duty to keep the information secret or limit its use. For purposes of this definition:

- The term "disclose" means to enable a third party to learn the trade secret.  For purposes of a person.

- A person "uses" a trade secret if he exploits it in a way that is likely to result in injury to the owner of the trade secret owner or enrichment of the defendant.  Some examples of "use" include:  marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, or relying on the trade secret to assist or accelerate research or development.

An employee of an entity may not disclose to a competitor a trade secret of the entity that he learned during his employment even if he had no written contract with the employer.

## Easoon Claim 5 – breach of fiduciary duty

Easoon's Claim 5 alleges that Mr. Kelly committed a breach of fiduciary duty owed to Easoon.

A person who is an agent of a company owes the company a fiduciary duty, which includes a duty of loyalty. The duty of loyalty means that an agent must act in the best of interest of the company, not in his own personal self-interest or in the interest of some other person or entity. The duty of loyalty also means that an agent cannot divert the employer's assets or business opportunities for his own benefit or for the benefit of someone other than the employer.

To prevail on this claim, Easoon must prove each of the following propositions by a preponderance of the evidence:

1.      Mr. Kelly was an agent of Easoon.

2.      During the period when he was an agent of Easoon, Mr. Kelly breached a duty of loyalty to Easoon.

3.      Mr. Kelly's breach of his duty of loyalty proximately caused harm to Easoon.

The question has been raised whether at the relevant time, Mr. Kelly was an agent of Easoon or was an independent contractor. An "agent" is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts business, manages some affair, or does some service for the principal. An "independent contractor" is a person who undertakes a specific job, where the company who hires him does not have the right to direct and control the method and manner of doing the work. If Easoon had the right to control Mr. Kelly's actions, you

may find that he was an agent of Easoon and not an independent contractor, even though the right to control may not have been exercised.

**Easoon Claim 6 – aiding and abetting breach of fiduciary duty**

Easoon's Claim 6 alleges that MOSO aided and abetted Mr. Kelly in committing a breach of his fiduciary duty to Easoon.

To prevail on this claim, Easoon must prove each of the following propositions by a preponderance of the evidence:

1.      Mr. Kelly breached a duty of loyalty to Easoon, as set out in the instruction describing Easoon's Claim 5.

2.      MOSO knowingly participated in Mr. Kelly's breach.

3.      Mr. Kelly's breach of his duty of loyalty caused harm to Easoon.

**Easoon Claim 7 – Fraud**

Easoon's Claim 7 alleges that Mr. Kelly committed fraud. To prevail on this claim, Easoon must prove all of the following propositions by clear and convincing evidence:

1.    Mr. Kelly made a false representation;

2.    Mr. Kelly intended to deceive Easoon;

3.    Mr. Kelly intended to induce Easoon to act or not act in reliance on the false representation;

4.    Easoon justifiably relied on the false representation.

5.    Easoon suffered damages.

6.    <u>Either</u>:

     (a)    Easoon used ordinary care to find out the facts and protect against loss; or

     (b)    A confidential relationship existed between Easoon and Mr. Kelly.

For purposes of element 6 of this claim, the following definitions apply:

<u>Confidential relationship</u>: A confidential relationship is any relationship where one party exercises a controlling influence over the will, conduct, and interest of another. A confidential relationship also includes any relationships in which the law requires the utmost good faith, such as the relationship between employer and employee or between principal and agent. (I have previously defined the terms principal and agent.)

<u>Ordinary care</u>: Ordinary care is the degree of care that an ordinarily prudent person exercises under the same or similar circumstances.

## MOSO claim 3 - Defamation

MOSO Claim 3 alleges that Easoon committed defamation.

Defamation is a communication that tends to injure a person's or an entity's reputation, that is, it tends to diminish the esteem, respect, goodwill, or confidence in which the person or entity is held and tends to cause bad feelings or opinions about the person or entity.  A communication is defamatory if it tends to lower the person or entity in the estimation of the community or if it deters others from associating or dealing with the person or entity that was defamed.

The term "defamation" includes both libel, which is written defamation, and slander, which is oral defamation.

To prevail on this claim, MOSO must prove both of the following elements by a preponderance of the evidence:

1.      Easoon defamed MOSO.

2.      The defamatory information was published, in other words, it was communicated to someone other than the person or entity to whom the information refers.  Publication may be intentional, reckless, or negligent.  A person intentionally publishes a defamatory statement if he communicates the statement knowing it is false. A person recklessly publishes a defamatory statement if he communicates the statement with utter disregard for whether it is false.  A person negligently publishes a defamatory statement if he communicates the statement under circumstances when a reasonable person would not have done so.

If you find that a written statement was defamatory, then MOSO is not required to show that it suffered any actual monetary losses from the written defamation.

44

If you find that an oral statement was defamatory and that the oral statement defamed MOSO in its trade, business, or profession, then MOSO is not required to show that it suffered any monetary losses from that oral defamation.

Otherwise, MOSO must prove by a preponderance of the evidence that the oral defamatory statement caused it a monetary loss.


It is a defense to a claim of defamation that the alleged defamatory statements were substantially true at the time the statements were made.  Thus, even if you find that Easoon made defamatory statements about MOSO that proximately caused it injury, you cannot award damages if you find that the statements were substantially true.  This does not require the alleged defamatory statements to be absolutely true.  To prevail on this defense, Easoon must prove by a preponderance of the evidence that the alleged defamatory statements were either true or substantially true.

A statement is substantially true, if it was no more damaging to MOSO's reputation than an absolutely true statement would have been.  In other words, if the "gist" or "sting" of the allegedly defamatory statement produces the same effect in the mind of the recipient as the precise truth would have produced, then the statement is "substantially true" and you cannot award damages to MOSO for the statement.


If you find that Easoon committed oral or written defamation and the alleged statements were not true or substantially true, then you must determine how much MOSO's reputation has been harmed.    To make that determination, you must consider the reputation that MOSO enjoyed before the defamatory publication as compared to

45

the reputation that MOSO enjoyed after the publication, and whether that reputation has actually been diminished since the publication.  You may also consider the manner in which the defamatory matter was distributed and the extent of its circulation in MOSO's community and whether those who read the publications understood it to refer to MOSO.

**MOSO Claim 4 – Trade libel**

MOSO's Claim 4 alleges that Easoon committed trade libel.  To prevail on this claim, MOSO must prove each of the following propositions by a preponderance of evidence:

1.    Easoon made a false statement disparaging MOSO's good or services.

2.    Easoon either intended the false statement to cause economic loss, or reasonably should have recognized that it would result in economic loss.

3.    As a result, MOSO suffered an economic loss.

4.    Easoon either knew that the statement was false or recklessly disregard whether the statement was true or false.

**Damages**

If you find in favor of the party asserting a particular claim, then you must determine what amount of damages, if any, to award to the party on that claim.

If, on a particular claim, you find in favor of the party against which the claim is asserted, then you will not consider the question of damages on that claim.

**Damages – Dasso/Easoon Claim 1 (patent infringement)**

If you find that MOSO infringed any valid claim of the patent, you are to award Dasso and Easoon damages adequate to compensate them for that infringement.  The damages you award are intended to compensate the patent holder, not to punish the infringer.  Dasso and Easoon must prove damages by a preponderance of the evidence.

**Damages – Dasso/Easoon Claim 1 – Lost profits and reasonable royalty**

There are two alternative types of damages that Dasso and Easoon may be entitled to recover for each infringing sale: either lost profits or a reasonable royalty, but not both.

Lost profits consist of the additional profits that Dasso and Easoon would have made if there had been no infringement by MOSO. I will describe in a moment what Dasso and Easoon must prove to recover lost profits damages.

A reasonable royalty is defined as the amount the patent owner and someone wanting to use the patented invention would agree upon as a fee for use of the invention.

Dasso and Easoon are entitled to recover no less than a reasonable royalty for each infringing sale, even if they cannot prove that they suffered lost profits in connection with that sale.

**Damages – Dasso/Easoon Claim 1 – Lost profits (1)**

To recover lost profits, Dasso and Easoon must prove all of the following elements by a preponderance of the evidence:

1.    A reasonable probability that, but for MOSO's infringement, Dasso/Easoon would have made additional profits through the sales of all or some of the patented product (which includes a product imported into the United States made by a patented process) that MOSO made.

2.    The amount of profit Dasso/Easoon would have made on those additional sales.  Dasso/Easoon do not need to prove this amount with precision, and if there are uncertainties regarding the specific amount of lost profits, you may resolve those uncertainties in favor of Dasso/Easoon and against MOSO.

3.    MOSO reasonably should have foreseen that Dasso/Easoon would have lost profits.

There are alternative ways for Dasso/Easoon to establish an entitlement to recover lost profits.  I will discuss these in the following instructions.

It is important for you to remember that lost profits damages are the profits lost by Dasso/Easoon due to the infringement by MOSO, not the profits made by MOSO.

**Damages – Dasso/Easoon Claim 1 – Lost profits (2)**

One way that Dasso/Easoon may establish that it is reasonably probable, that is, more likely than not, that they would have made additional sales of the patented product (which includes importation into the United States of a product made by a patented process) is by proving three things:

1.    There was a demand for the patented product;

2.    There was no acceptable, non-infringing substitute for the patented product; and

3.    Dasso/Easoon were capable of satisfying the demand.

I will explain each of these to you.

First, "demand" for the product is generally satisfied when Dasso/Easoon prove that there were significant sales of either their patented product or of MOSO's infringing product. However, where the product includes features and functionality not covered by the patent, Dasso/Easoon must prove that the patented feature drives the demand for the product.

Second, an "acceptable, non-infringing substitute" is a product that does not infringe the '578 patent and has the advantages of the patented invention that were important to the purchasers of MOSO's product.  If purchasers of MOSO's product were motivated to purchase that product because of features that were available only from that product and Dasso/Easoon's patented product, then other products are not acceptable substitutes, even if they otherwise competed with Dasso/Easoon's and MOSO's products.

Third, to prove Dasso/Easoon were capable of "satisfying the demand" for the

patented product, Dasso/Easoon must prove that they had the manufacturing and marketing capacity, either itself or through the use of third parties, to make the sales they say were lost to MOSO.

**Damages – Dasso/Easoon Claim 1 – Lost profits (3)**

An alternative way that Dasso/Easoon may establish that it is reasonably probable that they would have made additional sales of the patented product (which includes importation into the United States of a product made by a patented process) is by proving two things:

1.    Dasso/Easoon and MOSO are the only suppliers for the product in the market; and

2.    Dasso/Easoon were capable of making all of the sales made by MOSO.

If Dasso/Easoon prove these things, they are entitled to recover their lost profits on all of the sales made by MOSO unless MOSO proves that Dasso/Easoon would not have made some or all of the sales.

**Damages – Dasso/Easoon Claim 1 – Lost profits (4)**

Dasso/Easoon contend that the patented product is normally sold along with other collateral products, such as clips, fasteners and screws among others.  To recover lost profits for such collateral sales, Dasso/Easoon must prove two things:

1.      It is reasonably probable that Dasso/Easoon would have sold the collateral products if MOSO had not infringed; and

2.      The collateral products function together with the patented product as a functional unit.  Dasso/Easoon may not recover lost profits on other products that might be sold along with the patented product for convenience or business advantage, but that are not functionally part of the patented product.

**Damages – Dasso/Easoon Claim 1 – Lost profits (5)**

If you conclude that Dasso/Easoon have proven that they lost profits because of MOSO's infringement, the lost profits that you award should be the amount of revenue that Dasso/Easoon would have received on any sales that they lost because of the infringement, minus any additional costs that they would have incurred in making those sales.

Dasso/Easoon are required to prove the amount of their lost profits to a reasonable probability and may not recover amounts that are speculative.  However, mathematical certainty is not required, and if the reason Dasso/Easoon have difficulty proving the amount of its lost profits is that MOSO did not maintain adequate records, then you should resolve any doubts as to the amount of lost profits in Dasso/Easoon's favor.

### Damages – Dasso/Easoon Claim 1 – Reasonable royalty

Dasso/Easoon are entitled to recover a reasonable royalty for any of MOSO's infringing sales for which they did not prove lost profits.

A royalty is a payment made to the owner of a patent by another person or entity so that it can make, use, sell; offer for sale, or import the patented invention. A "reasonable royalty" is the amount Dasso/Easoon and MOSO would have agreed upon as a royalty at the time MOSO's infringement began.

In determining a reasonable royalty, you should assume that Dasso/Easoon would have been willing to allow MOSO to make, use, sell, offer for sale, or import the patented invention and that MOSO would have been willing to pay Dasso/Easoon to do so. You should take into account what Dasso/Easoon's and MOSO's expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both Dasso/Easoon and MOSO would have believed that the '578 patent was valid and infringed. You should also assume that MOSO would have been willing to pay, and Dasso/Easoon would have been willing to accept, the reasonable royalty they negotiated.

This is not an exact science. The evidence may support more than one reliable method for estimating a reasonable royalty. Your role is to determine what reasonable royalty Dasso/Easoon and MOSO would have agreed upon if they had negotiated in this manner, not just what either Dasso/Easoon or MOSO would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

1.      Royalties that others paid to Dasso/Easoon to be allowed to make, use,

sell, offer for sale, or import the patented invention;

2.      Royalties that MOSO paid to others for comparable patents;

3.      Whether Dasso/Easoon had a policy of licensing or not licensing the patents;

4.      Whether Dasso/Easoon and MOSO are competitors;

5.      Whether use of the patented invention helps to make sales of other products or services;

6.      Whether the patented invention is commercially successful, as well as its profitability;

7.      The advantages of using the patented invention over products not covered by the patent;

8.      The extent of MOSO's use of the patented invention and the value of that use to MOSO;

9.      Any royalty amounts that are customary for similar or comparable patented inventions;

10.     The portion of the profit on sales that is due to the patented invention, as opposed to other factors, such as unpatented elements or processes, features, or improvements developed by MOSO;

11.     Expert opinions regarding what would be a reasonable royalty.

Dasso/Easoon are required to prove the amount of a reasonable royalty to a reasonable probability and may not recover amounts that are speculative.  However, mathematical certainty is not required, and if the reason Dasso/Easoon have difficulty proving the amount of a reasonable royalty is that MOSO did not maintain adequate

records, then you should resolve any doubts as to the amount of a reasonable royalty in Dasso/Easoon's favor.

**Dasso/Easoon Claim 1 – Damages - apportionment**

A damages award—either in the form of lost profits or a reasonable royalty—must reflect the portion of the profits or royalty attributable to the respective inventions of the Asserted Claims of the '578 patent.  In other words, your damages award must reflect the value you find attributable to the patented inventions.

The evidence tending to separate or apportion damages between the patented features and unpatented features must be reliable and tangible, and not conjectural or speculative.  You may award damages based only on profits or royalty that are directly attributable to the value of the patented technology.  You may not award damages based on profits or royalty attributable to unpatented features of the Accused Products.

Dasso/Easoon bear the burden of establishing amounts directly attributable to the patented features.

**Dasso/Easoon Claim 1 – Damages – Double recovery**

There is a general prohibition against double recovery for sales/profits relating to the same product.  If a sale is the basis of one form of monetary recovery, that same sale cannot also be the basis of another form of monetary recovery.

This means that if you award Dasso/Easoon their lost profits under patent infringement for the sale of a certain number of accused bamboo scrimber products, you may not also award a reasonable royalty for those same sales.

**Dasso/Easoon Claim 1 – Totaling the damage award**

Any amounts that you award for lost profits and for reasonable royalties should be set out separately on the verdict form that I will give you.

**Damages – Easoon claims other than claim 1;
MOSO claims other than claims 3 and 4**

If you find in favor of Easoon against MOSO and/or Mr. Kelly, Mr. Clifton, and Mr. Osterman on one or more of Easoon's claims aside from Claim 1 (patent infringement), you must determine the amount of compensatory damages that Easoon is entitled to recover.  Easoon must prove its damages by a preponderance of the evidence.

Similarly, if you find in favor of MOSO and against Easoon on one or more of MOSO's claims other than claims 3 and 4 (defamation and trade libel), you must determine the amount of compensatory damages that MOSO is entitled to recover.  MOSO must prove its damages by a preponderance of the evidence.

The purpose of an award of compensatory damages is to provide just and reasonable compensation for the harm of injury done.  Damages must be proven with reasonable probability and not left to speculation.  Damages are considered to be speculative when there is merely a possibility, as opposed to a reasonable probability, that an injury exists.

You should award the sum of money that in your judgment will fairly and reasonably compensate the party that prevails on a claim for any injury that you find it has shown by a preponderance of the evidence.

**Damages – MOSO claims 3 and 4 (defamation and trade libel)**

If you find in favor of MOSO on one or both of its claims 3 and 4 (defamation and trade libel), you must determine the amount of compensatory damages that MOSO is entitled to recover.  MOSO must prove its damages by a preponderance of the evidence.

You should award MOSO damages that will fairly and adequately compensate it for any damage to its reputation and standing in the community and any monetary loss it suffered.  In determining the amount of compensatory damages for defamation and/or trade libel, you must consider all of the facts and circumstances as shown by the evidence and should consider the following factors:

- the nature and character of the statement(s);

- the language used;

- the occasion(s) when the statement(s) were published;

- the extent of the circulation of the statement(s);

- the probable effect on those to whose attention the statement(s) came;

- the probable and natural effect of the statements on MOSO's business and standing in the community.

Any award of damages that you make must be based on the evidence and not on speculation.  The law does not provide a fixed standard for measuring damage to reputation, and counsel are not permitted to argue that a specific amount is appropriate. You must be governed by your judgment and experience, the evidence in the case, and the purpose of an award of compensatory damages:  fair and reasonable compensation for harm wrongfully caused by another.

64

A person or entity that has been defamed but who has not suffered any injury may recover what the law calls nominal damages, typically in the amount of $1.00.

**Final instructions**

Once you are all in the jury room, the first thing you should do is choose a presiding juror.  The presiding juror should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard.  You may discuss the case only when all twelve jurors are present.

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury.  You may not communicate with others about the case or your deliberations by any means.  This includes oral or written communication, as well as any electronic method of communication, such as by using a telephone, cell phone, smart phone, iPhone, Android, Blackberry, or any type of computer; by using text messaging, instant messaging, the Internet, chat rooms, blogs, websites, or social media, including services like Facebook, LinkedIn, YouTube, Twitter, Instagram, or SnapChat; or by using any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the court security officer.  The note should be signed by the presiding juror or by one or more members of the jury.  To have a complete record of this trial, it is important that you not communicate with me except by a written note.  I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer.

If you send me a message, do not include the breakdown of your votes.  In other words, do not tell me that you are split 6-6, or 9-3, or whatever your vote happens to be.

A verdict form has been prepared for you.  You will take this form with you to the jury room.

[Read the verdict form.]

When you have reached unanimous agreement, your presiding juror will fill in and date the verdict form, and each of you will sign it.

Advise the court security officer once you have reached a verdict.  When you come back to the courtroom, I will read the verdict aloud.

The verdict must represent the considered judgment of each juror.  Your verdict must be unanimous.

You should make every reasonable effort to reach a verdict.  In doing so, you should consult with each other, express your own views, and listen to your fellow jurors' opinions.  Discuss your differences with an open mind.  Do not hesitate to re-examine your own view and change your opinion if you come to believe it is wrong.  But you should not surrender your honest beliefs about the weight or effect of evidence just because of the opinions of your fellow jurors or just so that there can be a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence. You should deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.

You are impartial judges of the facts.